# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| C.P. PACKAGING, INC. d/b/a OHLSON PACKAGING,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM J. HALL and HART FOOD PRODUCTS, INC.,<br><br>Defendant. | Case No. 20-cv-12041-RWZ |

# MEMORANDUM OF DEFENDANTS
# IN SUPPORT OF THEIR MOTION TO DISMISS COMPLAINT
# PURSUANT TO FED. R. CIV. P. 12(b)(6) AND, IN THE
# ALTERNATIVE, SPECIAL MOTION TO DISMISS COMPLAINT
# PURSUANT TO THE MASSACHUSETTS ANTI-SLAPP STATUTE

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT.

The gravamen of this action is commercial disparagement consisting solely of defendants' statements made in anticipation of litigation.  Some of the statements were confidential attorney-client communications between defendants and their former counsel.  Under Massachusetts law, the litigation privilege affords defendants immunity from liability for all of them.  Independently, none of the statements is defamatory as a matter of law.

On these bases, defendants now move to dismiss this action under Rule 12(b)(6).  In the alternative, they seek dismissal under the Massachusetts anti-SLAPP law, Mass. Gen. Laws ch. 231, section 59H.  This is explained further below.

## II.   FACTS AND PROCEEDINGS.

### A.   Background.

Plaintiff C.P. Packaging, Inc., d/b/a Ohlson Packaging ("Ohlson") is a Massachusetts corporation which manufactures commercial packaging equipment for multiple industries, including companies engaged in food production.  Complaint, ¶ 8.

Defendants are William J. Hall and Hart Food Products, a company Mr. Hall co-owns with his wife, Leila Hall, in Paramount, California.  They are sometimes referred to collectively hereinafter as Hart.  Hart produces frozen food products, including chicken nuggets with various sauces.  Hart

uses mechanical equipment to insert the chicken nuggets and sauce into packages.  Complaint, ¶ 7;  Wm. Hall dec., ¶ 3.[1]

In December 2015, Hart entered into a contract with Ohlson and its equipment dealer, High Dream Machinery, LLC ("HDM"), to purchase food packaging equipment.  Complaint, ¶ 9.  The equipment arrived at Hart's facility in California in February 2016.  Complaint, ¶ 9;  Wm. Hall dec., ¶ 4.

Afterward, the equipment did not perform to Hart's expectations.  There were bolts and washers that were not flush, horizontal surfaces, metal-on-metal seams, and improper welds.  These things threatened to allow the contamination of the equipment with bacteria which can be very harmful to humans if it winds up in food.  Hart complained to HDM and Ohlson.  Ohlson and HDM tried to remedy the problems, but failed.  *See* Wm. Hall dec., ¶ 5-7.

In October 2016, Hart hired a food safety consultant to study the problems.  All the while, Hart employed a rigorous cleaning and testing regiment of its facility and food products.  Nonetheless, the sanitation issues remained an ongoing and pressing concern.  By February 2017, Mr. Hall concluded that the equipment posed a great risk to Hart's customers and

---

[1] It is Hart's first position that the Court should order dismissal pursuant to Rule 12(b)(6) without considering anything except the complaint and its exhibits.  Insofar as this motion puts before the Court matters which are outside the complaint, defendants ask the Court to consider them pursuant to Rule 12(d) (which allows the Court to treat the motion as one for summary judgment).

operations.  Wm. Hall dec., ¶ 8.

In February 2017, Hart was contemplating litigation against Ohlson and HDM.  In that month, Mr. Hall emailed Brad Ducorsky of HDM and asked for a refund of the purchase price for most of the equipment, citing the safety and sanitation concerns summarized above.  Wm. Hall dec., ¶ 9.

Mr. Ducorsky disclaimed responsibility for the problems, denied the refund request, and threatened litigation.  Litigation was looming.  Wm. Hall dec., ¶ 10.

True and correct copies of the emails on which Ohlson has predicated this action are attached to the declaration of Mr. Hall.[2]  They are ordered and lettered as Exhibits C, D, E, and F, and are identical to Exhibits C, D, E, and F to Ohlson's complaint, for the Court's ease of reference.  Wm. Hall dec., ¶ 13.  They are described in detail below.

Ex. C (email exchanges of February 15, 2017).  The top portion of page 1 of this exhibit is an email which Mr. Hall sent to Mr. Ducorsky, with a copy to his wife, Leila, and his then-attorney, Donald Forbes, on February 15, 2017.  This email articulates Mr. Hall's contemplation of litigation against

---

[2] The emails cited herein are properly considered on a 12(b)(6) motion.  This is because no party disputes their authenticity, they are central to Ohlson's claims, and the complaint refers to them.  *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993); *Wheldon v. U.S. Bank Nat'l Ass'n*, 2020 WL 6048731, * 1 (Oct. 13, 2020 D. Mass.) (opn. of Zobel, J.).

Ohlson and BHD at that time, as is seen in this sentence: "If this goes to court we'll be asking for damages and all cost associated with the install of the equipment . . . . I will hand this over to my attorney if I haven't received an agreement in writing from you and John by Friday, February 24th." Hart dec., ¶ 14;  Ex. C.

Ex. D (email of February 16, 2017). This is an email which Mr. Hall sent to Mr. Ducorsky, with a copy to Leila Hall and attorney Forbes, on February 16, 2017.  In this email, Mr. Hall wrote that he would "see you in court[.]"  He also wrote this: "Oh if we finally [sic] Listeria when we have the independent lab come in and do the swa[bb]ing and it comes up in court or with USDA and we are forced into a recall costing us potentially millions of dollars that'll be on your guy's head too."  Hart was contemplating litigation at the time based on what it viewed as Ohlson's and BHD's liability to Hart for selling Hart equipment that was susceptible to *listeria* contamination. Wm. Hall dec., ¶ 15;  Ex. D.

Ex. E (email exchanges of February 22 and 23, 2017). Mr. Hall sent these emails in anticipation of litigation against Ohlson and BHD, writing to Mr. Ducorsky, "have you ever heard of Listeria monocytogenes? . . . You'll be looking at a multi million dollar lawsuit from Hart . . . And if we only find Listeria species which I'm convinced we will, a recall will be avoided but the USDA will come after Ohlson . . . This is no idle threat.  This is what

my USDA consultant, a retired USDA inspector is telling me . . ." Wm. Hall dec., ¶ 16; Ex. E.

Part of this exhibit includes a confidential attorney-client communication between Mr. Hall and attorney Forbes. It is the email which Mr. Hall sent to Mr. Forbes on February 22, 20187, at 10:32 a.m. Mr. Hall sent this email for the purpose of seeking legal advice, and didn't mean to share it with anyone except attorney Forbes. In it, Mr. Hall wrote, "Don looks like they're not going to deal with us. Can we start a class action lawsuit against them . . . When we tear down their equipment I'm going to have an independent lab come in and swab the conveyors for listeria. If we find it, I can use that as leverage threatening to report them to USDA and Los Angeles county health department. Any other angles you can think of?" Wm. Hall dec., ¶ 17; Ex. E.

Mr. Hall's arbitration counsel, Eugen C. Andres, later inadvertently produced this document to Ohlson before an arbitration between the parties held in Boston in 2019. Mr. Andres affixed Bates numbers to this document containing an alpha prefix (h) denoting Hart as the source of the document. Afterward, Ohlson and its counsel never apprised Hart or its counsel that they had received this clearly-privileged communication or offered to comply with their ethical obligations concerning it. Wm. Hall dec., ¶ 17.

Ex. F (Email of February 22, 2017). This is another confidential

6

attorney-client communication. It is an email which Mr. Hall sent to attorney Forbes and his colleague, Beatriz Medina-Storie, on February 22, 2017, at 7:02 p.m. It anticipates litigation and expresses Mr. Hall's opinion that *listeria* contamination would be found in areas of the equipment where sectional components met one another. Hart's arbitration counsel, Mr. Andres, later inadvertently produced this email to Ohlson as well after affixing a Bates number to it, H00167, denoting Hart as its source. Afterward, Ohlson and its counsel never apprised Hart that they had received this clearly-privileged communication. Nor did Ohlson's counsel offer to comply with its ethical obligations concerning it. Wm. Hall dec., ¶ 19.

In July 2019, Leila Hall took photographs of the Ohlson equipment and conducted testing for the presence of *listeria* on samples taken via swabs from that equipment. Testing revealed that half of the samples collected were positive for the presence of *listeria*. Ms. Hall was well-familiar with the Ohlson equipment because she was heavily involved in Hart's business at the time it was installed at the Hart facility in California. Leila Hall dec., ¶ 2, and Ex. 1 thereto. Hart self-reported these results to the U.S. Department of Agriculture. *Id.*, ¶ 3.

Hart didn't learn of Ohlson's efforts to sell its business during the period in which any of the above-listed emails were sent and received. Hart did not learn of the sale, or Ohlson's attempts to sell, until after the fact.

Wm. Hart dec., ¶ 17.

Hart never published any of these emails to any third parties. Nor did Hart ever come into contact with any actual or prospective purchaser of Ohlson's business nor with anyone affiliated with any such actual or prospective purchaser. Wm. Hart dec., ¶ 17. If Ohlson published Mr. Hall's emails, or anything about actual or potential *listeria* contamination, to any such persons, Ohlson did so on its own and without Hart's knowledge or participation. Ohlson apparently elected to voluntarily disclose the aforementioned issues to its prospective buyers, allegedly resulting in Ohlson being able to sell its business for *only* $32,000,000 (instead of some higher amount). Complaint, ¶¶ 37, 52.

### B. Arbitration (2019-2020).

Arbitration proceedings between Hart and Ohlson began in Boston in August 2019 and culminated in the arbitral award issued in February 2020. The award lacked any findings relating to whether or not the equipment was or was not contaminated with *listeria*. Wm. Hall dec., ¶ 20.

### C. This Action.

Ohlson filed this action in November 2020, alleging claims for commercial disparagement, fraud, interference with business relations, and violation of Mass. Gen. Laws ch. 93A, § 11. Ohlson premised all of its claims on the statements listed above. There is no allegation Hart published any of

the statements to any third party or any prospective purchaser of Ohlson's assets or stock.

On November 16, 2020, Hart agreed to waive service. All counsel agreed that defendants would have until today (January 19, 2021) to file this motion. Donnelly dec., 2.

### III. ARGUMENT.

### A. Ohlson's Claims Rest Wholly on Statements Afforded Absolute Protection by the Litigation Privilege under Massachusetts Law.

Massachusetts law bars claims predicated on statements made in contemplation of litigation, holding them shielded from liability by the litigation privilege. The privilege covers statement made preliminary to a proposed or contemplated action, so long as they bear some relation to the action. *See Fisher v. Lint*, 69 Mass. App. Ct. 360, 365-366, 886 N.E.2d 161, 167-168 (2007). *See also Sriberg v. Raymond*, 370 Mass. 105, 108-109, 345 N.E.2d 882, 883 (1976).

The privilege is absolute. It shields the maker of an offensive statement from any civil liability. It provides a complete defense, even if the offensive statements are uttered maliciously or in bad faith. *Doe v. Nutter, McClennen & Fish*, 41 Mass. App. Ct. 137, 140, 668 N.E.2d 1329, 1332 (1996) (no liability under ch. 93A, Massachusetts Civil Rights Act, invasion of

9

privacy, or intentional infliction of emotional distress). *See also Correllas v. Viveiros*, 410 Mass. 314, 321, 572 N.E.2d 7, 10-14 (1991) (no liability for malicious prosecution, defamation, or intentional infliction of emotional distress); *Robert L. Sullivan, D.D.S., P.C. v. Birmingham*, 11 Mass. App. Ct. 359, 367-368, 416 N.E.2d 528, 533-534 (1981) (no liability for abuse of process, libel, negligence, intentional infliction of emotional distress, or other torts). *See also Frazier v. Bailey*, 957 F.2d 920, 932, 933 (1st Cir. 1992) (no liability for emotional distress, defamation, intentional infliction of emotional distress, or violation of Massachusetts Civil Rights Act).

The privilege governs all claims based on protected statements, irrespective of the label affixed to them by counsel. To allow otherwise would make the privilege valueless if an individual would then be subject to liability under a different theory. *Nutter, McClennen, & Fish*, 41 Mass. App. Ct. 137 at 140-141, 668 N.E.2d at 1333.

The statements on which Ohlson sues were all written in emails authored by Mr. Hall and sent to Brad Ducorsky (of HDM) and Mr. Hall's attorney Donald Forbes. Mr. Ducorsky and attorney Forbes then relayed the statements to Ohlson and not to anyone else. All of the statements, on their faces, contemplated litigation. It follows that the litigation privilege bars any liability based on them. Ohlson's claims for fraud, interference with business relations, and violation of the unfair competition law are all derivative of its

commercial disparagement claim. Each relies strictly on the sued-upon statements, all of which are privileged. Ohlson alleges no other basis for fastening liability on Hart. Thus there remains no viable theory of liability which would save Ohlson's complaint from dismissal now. *See Nutter, McClennen & Fish*, 41 Mass. App. Ct. at 140, 668 N.E.2d at 1332; *Correllas*, 410 Mass. at 321, 572 N.E.2d at 10-14; *Sullivan*, 11 Mass. App. Ct. at 367-368, 416 N.E.2d at 533-534.

### B. Ohlson's Claims Are Predicated Entirely on Statements that Are Not Defamatory as a Matter of Law.

Ohlson is further precluded from recovery because the sued-on statements are not defamatory as a matter of law.

The elements of commercial disparagement are (1) publication of a false statement to a person other than the plaintiff, (2) of and concerning the plaintiff's products or services, (3) with knowledge of the statement's falsity or with reckless disregard of its truth or falsity; (4) intent to harm the plaintiff, or the foreseeability of that harm; and (5) pecuniary loss. *HipSaver, Inc. v. Kiel*, 464 Mass. 517, 523, 984 N.E.2d 755, 763 (2013) (internal citations and quotation marks omitted).

Nearly every one of these elements is absent here, as explained below.

#### 1. No false statement.

The sued-upon statements are not false. None attributes the

actual presence of *listeria* to Ohlson's equipment. Mr. Hall wrote about what he believed would happen "*if*" *listeria* were found on the equipment. He asserted his belief that the equipment's defects made it *prone to* contamination. At best, these statements were non-actionable because they were true. Testing revealed that the equipment *was* in fact contaminated with *listeria*. Leila Hall dec., ¶ 3; Exhibit 1 thereto. At worst, they were opinion -- and non-actionable for the same reason. *See King v. Globe Newspaper Co.*, 400 Mass. 705, 708-709, 512 N.E.2d 241, 246-247 (1987); *Flotech, Inc. v. E.I. Du Pont de Nemours Co.*, 627 F. Supp. 358, 368 (D. Mass. 1985), *aff'd*, 814 F.2d 775 (1st Cir. 1987); *Cole v. Westinghouse Broad. Co.*, 386 Mass. 303, 308-313, 435 N.E.2d 1021, 1025 (1982).

### 2. No Publication.

Ohlson doesn't, and can't, allege that Hart published the statements to anyone except Hart's counsel, Ohlson's dealer HDM, and Ohlson itself. Ohlson then voluntarily published the statements to a prospective buyer. Thus the only publication that occurred came directly from Ohlson.

Ohlson thus posits this theory: having denied in private, and at arbitration, that its equipment was contaminated with *listeria* or subject to such contamination, Ohlson voluntarily published statements to the opposite effect to third parties, thus *defaming itself*. As a matter of both law and logic,

this is both absurd and impossible.  See *White v. Blue Cross & Blue Shield of Mass., Inc.*, 442 Mass. 64, 69-72, 809 N.E.2d 1034, 1035-1040 (2004) (rejecting doctrine of compelled self-publication defamation).  *See also* Rest. (2d) of Torts § 577 comment m (1997) (rejecting self-defamation except where plaintiff repeats a statement but is not cognizant of its defamatory nature).

## C. <u>Ohlson's Claims Are Further Precluded by Massachusetts Anti-SLAPP Law.</u>

### 1. <u>Anti-SLAPP law;  burden shifting analysis.</u>

The Massachusetts anti-SLAPP statute provides in pertinent part:

> In any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss.  The court shall advance any such special motion so that it may be heard and determined as expeditiously as possible.  The court shall grant such special motion, unless the party against whom such special motion is made shows that:  (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party.  In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

Mass. Gen. Laws ch.  231, § 59H.

The statute protects, under its broad definition for "a party's exercise of its right of petition," any statements "falling within constitutional protection

13

of the right to petition government." *Id. See Blanchard v. Steward Carney Hosp.*, 477 Mass. 141, 147-148, 75 N.E.3d 21, 29 (2017).

Section 59H sets forth a two-step process for determining whether an action constitutes a SLAPP suit. First, the moving party must show that the claims against it are based on its petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities. *Duracraft Corp. v. Holmes Prods. Corp.*, 427 Mass. 156, 167-168, 691 N.E.2d 935, 943 (1998). Defendant's motivation for engaging in petitioning activity does not factor into whether it has met this threshold burden. *477 Harrison Ave., LLC v. JACE Boston, LLC*, 477 Mass. 162, 168, 74 N.E.2d 1237, 1245-1246 (2017). *See also Office One, Inc. v. Lopez*, 437 Mass. 113, 122, 769 N.E.2d 749, 757 (2002). Rather, the key inquiry is whether the only conduct complained of is petitioning activity. 477 *Harrison Ave.*, 477 Mass. at 168, 74 N.E.2d at 1244 (quoting *Fabre v. Walton*, 436 Mass. 517, 524, 781 N.E.2d 780 (2002)).

Upon such a showing, the Court proceeds to the second step. The burden shifts to plaintiff to establish by a preponderance of the evidence that (1) defendant's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law, i.e., sham petitioning, and (2) defendant's acts caused plaintiff actual injury. Mass. Gen. Laws ch. 231, § 59H. *See also Baker v. Parsons*, 434 Mass. 543, 544, 750 N.E.2d 953, 960

(2001). A factor is whether plaintiff's claims are colorable, i.e., offering some reasonable possibility of a decision in its favor. *Blanchard*, 477 Mass. at 160-161, 21 N.E.3d at 39 (quoting *L.B. v. Chief Justice of Probate & Family Court Dept.*, 474 Mass. 231, 241, 49 N.E.2d 230 (2016) and *Commonwealth v. Levin*, 7 Mass. App. Ct. 501, 504, 388 N.E.2d 501 (1979) (internal citations omitted)).

The structure of the nonmoving party's complaint and the labels of the claims chosen by plaintiff's counsel matters not to this analysis. The law does not allow plaintiffs to circumvent the anti-SLAPP statute by combining claims based on petitioning as well as non-petitioning conduct into a single count. *See Reichenbach v. Haydock*, 92 Mass. App. Ct. 567, 573, 90 N.E.3d 791, 797 (2017). The Court assesses the totality of the circumstances pertinent to plaintiff's asserted primary purpose in bringing its claim. *See Blanchard*, 477 Mass. at 160, 75 N.E.3d at 39.

### 2. First prong: The statements attributed to Hart are protected by the statute, because they pertain to Hart's right to petition.

Pre-litigation threats to file suit constitute petitioning activity protected by the anti-SLAPP statute. *See Gillette Co. v. Provost*, Nos. 132499, SUCV2015-00149-BLS2, 2015 Mass. Super. LEXIS 139, at 5 (Sep. 15, 2015), *aff'd*, 91 Mass. App. Ct. 133, 74 N.E.2d 275 (2017). Here, Ohlson's claims are

15

premised entirely upon alleged statements Hart made preliminary to anticipated litigation. It follows they all fail. *Id*. *See also Fisher*, 69 Mass. App. Ct. at 365-366, 886 N.E.2d at 167-168; *Sriberg v. Raymond*, 370 Mass. at 108-109, 345 N.E.2d at 883.

Moreover, the sued-on statements also constitute petitioning activity on the part of Hart. They are "statement[s] reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding[.]" They are thus statements falling within the constitutional protection of the right to petition government grounded in the first amendment to the federal constitution. All of Ohlson's claims are predicated on these statements, and these statements only. It follows that Hart has met its threshold burden on this motion. *Wenger v. Aceto*, 451 Mass. 1, 5, 883 N.E.2d 262, 266 (2008).

### 3. Second prong: Ohlson can't and won't be able to show a probability of prevailing on the merits, since the statements aren't defamatory as a matter of law.

Ohlson will be unable to carry its burden of showing that Hart's petitioning activities lacked any reasonable factual or legal support or that Ohlson's claim is colorable. *See Blanchard*, 477 Mass. at 160-161, 75 N.E.3d at 39. Nor will Ohlson be able to establish that its lawsuit "was not primarily brought to chill the special movant's legitimate petitioning activities." *See id*.

16

Hart's statements, at worst, were non-actionable opinion never published by Hart to anyone except Hart's own counsel, Ohlson, and Ohlson's affiliate, HDM. Thus they cannot possibly be defamatory or tortious in any other way. *See King*, 400 Mass. at 708-709, 512 N.E.2d at 246-247; *Flotech*, 627 F. Supp. at 368; *Cole*, 386 Mass. at 308-313, 435 N.E.2d at 1025.

## IV.  CONCLUSION.

The Court should grant this motion and dismiss this action with prejudice.

>Respectfully submitted,
>
>Defendants William J. Hall and Hart Food Products, Inc.
>
>
>By their attorneys,
>
>
>s/Dan Lawton
>
>Heather L. Rosing (California State Bar No. 183986
>(*Pro Hac Vice*)
>Dan Lawton (California State Bar No. 127342) (*Pro Hac Vice*)
>KLINEDINST PC
>501 West Broadway, Suite 600
>San Diego, California
>(619) 239-8131
>hrosing@klinedinstlaw.com
>dlawton@klinedinstlaw.com
>
>
>s/T. Christopher Donnelly
>
>T. Christopher Donnelly (BBO# 129930)
>DONNELLY, CONROY & GELHAAR, LLP
>260 Franklin Street, Suite 1600
>Boston, MA  02110
>(617) 720-2880
>tcd@dcglaw.com

Dated:  January 19, 2021

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 19, 2021.

s/T. Christopher Donnelly
T. Christopher Donnelly
