UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-cv-12041-RWZ

C.P. PACKAGING, INC. *dba* OHLSON PACKAGING, Plaintiff

v.

WILLIAM J. HALL and
HART FOOD PRODUCTS, INC., Defendants

<u>MEMORANDUM & ORDER</u>

August 5, 2021

ZOBEL, S.D.J.

C.P. Packaging, Inc., doing business as Ohlson Packaging ("Ohlson"), filed a

four-count complaint against Hart Food Products, Inc. ("Hart Foods") and William J. Hall

("Hall"), Owner and President of Hart Foods, for fraud, tortious interference with

advantageous business relations, commercial disparagement, and violation of the

Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 11.  Defendants

move to dismiss all counts.  (Docket # 14).

I.     **Factual Background[1]**

Ohlson is a manufacturer of commercial packaging equipment.  Hart Foods sells

frozen food products.  In December 2015, Hart Foods contracted with Ohlson and

Ohlson's equipment dealer, High Dream Machinery, LLC ("HDM"), to purchase

equipment to enhance the automation of Hart Foods' existing food packaging

---

[1] The facts are derived from plaintiffs' complaint and the exhibits filed therewith.

1

production line.  Ohlson delivered the equipment to the Hart Foods facility on February 7, 2016.

Defendants had difficulties integrating the Ohlson equipment into the existing production line.  Ohlson sent technicians to Hart Foods several times between February 2016 and January 2017 to adjust the equipment.  The technicians opined that Hart Foods' existing bagging machine, not Ohlson's equipment, caused the delays in production.  Defendants disagreed.

In October 2016, Hart Foods hired a food safety consultant to inspect the Ohlson equipment for compliance with the United States Department of Agriculture ("USDA") food safety regulations.  According to the consultant, the Ohlson equipment created a sanitation hazard because it had the potential to grow pathogens such as Listeria.

In February 2017, Hart Foods removed the Ohlson equipment from its facility and demanded that plaintiff and HDM issue a refund for the equipment based on the production issues.  HDM denied that the production delays were attributable to the Ohlson equipment.  Hall followed with a series of emails to HDM wherein he maintained that the Ohlson equipment was responsible for the delays and threatened litigation if plaintiff and HDM did not refund the purchase price.  He also sent several emails complaining about attendant Listeria contamination.  One email stamped February 22, 2017 at 10:02 AM stated:

> Your equipment doesn't work to spec and is dangerous to my employees and the people that consume our products. . .  I've got expert witness[es] from within the industry.  Non partisan health and safety inspectors.  Former and current USDA officials.  I've got the contaminated, defective and dangerous conveyors.

Compl., Ex. E.

2

In a separate email to his counsel[2] at 7:02 PM on the same day, Hall stated:

> We started Listeria testing independently several months ago and we're
> clean. That's not to say though that the improperly assembly quipment [sic]
> can't Harbor [sic] listeria where some of the sectional components of the
> conveyor hook up. . . . I know the product were [sic] shipping out is clean
> though because of our continued testing but it's a roll of the dice on how
> long that's going to work. I'm sure you're seeing the point of my emails to
> them is to scare them. I want them to realize they're dealing with somebody
> who's kind of crazy and seriously pissed off. Someone who's committed to
> this and won't back down. . . . BTW I would never ship any price [sic] that I
> thought might be hazardous."

Compl., Ex. F.

During these communications between Hall and HDM, John Ohlson, Jr. ("John")

was in the process of selling Ohlson Packaging. He disclosed the Listeria statements to

potential buyers. According to the complaint, all but one of the prospective buyers

discontinued negotiations to acquire Ohlson Packaging. In December 2017, John

ultimately sold the business to the only bidder for a price allegedly far below market

value.

The complaint alleges that defendants made knowingly false statements

regarding the sanitation and safety of Ohlson's food packaging equipment to gain

leverage in the refund discussions. Plaintiff asserts that the accusations caused a

reduction in Ohlson's market value. Defendants argue that the complaint fails to state a

claim for which relief can be granted because Hall's statements are privileged and

because plaintiff cannot establish a defamation claim. In the alternative, defendants

seek dismissal pursuant to the Massachusetts anti-SLAPP statute, Mass. Gen. Laws

ch. 231, § 59H.

---

[2] Communications between Hall and his counsel were produced as part of discovery in prior arbitration
proceedings.

II.     **Motion to Dismiss for Failure to State a Claim**

A.     **Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

B.     **Litigation Privilege**

The litigation privilege generally precludes civil liability based on "statements by a party, counsel, or witness in the institution of, or during the course of, a judicial proceeding."  Sriberg v. Raymond, 345 N.E.2d 882, 883 (Mass. 1976).  Defendants point out that Hall's statements explicitly contemplated litigation and argue that the privilege bars each of plaintiff's claims.

Nevertheless, the litigation privilege has limitations.  It applies only when the proceeding was "contemplated in good faith" and "under serious consideration."  Gillette Co. v. Provost, 74 N.E.3d 275, 284 (Mass. App. Ct. 2017); see id. ("If the proceeding is not contemplated in good faith, the privilege cannot be 'employed as a shield of immunity for defamation' or other liability." (quoting Sriberg, 345 N.E.2d at 884)).  Furthermore, "[w]here a party uses legal mechanisms, such as letters from counsel, to . . . extract concessions from a plaintiff in arguable violation of Chapter 93A, the litigation privilege does not shield it from liability."  58 Swansea Mall Drive, LLC v. Gator Swansea Property, LLC, No. 15-cv-13538, 2016 WL 5946872, at *2 (D. Mass. Oct. 12, 2016); see also Larson v. Perry, No. 19-cv-10203, 2020 WL 1495883, at *6 (D. Mass.

4

Mar. 27, 2020) (holding that the litigation privilege "does not give a lawyer the freedom to act with impunity.").

Plaintiff asserts that defendants were not contemplating litigation in good faith. The complaint plausibly alleges that Hall's Listeria statements were intended solely to develop leverage in the negotiations for a refund of the purchase price of the Ohlson equipment. In addition, the statements constitute evidence from which an inference of malicious purpose could be drawn to support the fraud and Chapter 93A claims. These questions regarding Hall's intent require resolution of facts that cannot be accomplished at this stage of these proceedings. See Larson, 2016 WL 5946872, at *7; see also Fisher v. Lint, 868 N.E.2d 161, 167 (Mass. App. Ct. 2007). Accordingly, defendants' motion to dismiss on the basis of the litigation privilege is denied.

### C.   Commercial Disparagement (Count III)

To sustain a claim for commercial disparagement, plaintiff must prove that defendants:

> (1) published a false statement to a person other than the plaintiff; (2) of and concerning the plaintiff's products or services; (3) with knowledge of the statement's falsity or with reckless disregard of its truth or falsity; (4) where pecuniary harm to the plaintiff's interests was intended or foreseeable; and (5) such publication resulted in special damages in the form of pecuniary loss.

HipSaver, Inc. v. Kiel, 984 N.E.2d 755, 763 (Mass. 2013) (internal quotation marks omitted) (recognizing the similarities between an action for commercial disparagement and an action for defamation).

5

The allegations pertaining to this count do not meet the publication element. Hall made the statements to his own counsel and Ohlson's affiliate, HDM.[3] Plaintiff nonetheless argues that publication occurred under the doctrine of self-publication. Ohlson insists that John was compelled to disclose the Listeria risk to prospective buyers due to the seriousness of Hall's statements and the potential for significant liability exposure if Listeria were found in the equipment. Nevertheless, the doctrine of self-publication has been expressly rejected by Massachusetts courts. See Doe v. Amherst Coll., 238 F. Supp. 3d 195, 227 n.7 (D. Mass. 2017) (citing White v. Blue Cross & Blue Shield of Mass., Inc., 809 N.E.2d 1034, 1044–45 (Mass. 2004)). Plaintiff does not allege that defendants published any statements to any person other than Ohlson.[4] The motion to dismiss count III is allowed.

### D. Tortious Interference with Advantageous Business Relations (Count II)

The complaint alleges that defendants' statements regarding Listeria contamination caused prospective buyers to discontinue negotiations to purchase Ohlson Packaging. Plaintiff has the burden of showing that "a business relationship from which the plaintiff might benefit existed; the defendant[s] knew of the relationship; the defendant[s] intentionally interfered with the relationship for an improper purpose or by improper means; and the plaintiff was damaged by that interference." Pembroke

---

[3] The complaint alleges that defendants made knowingly false statements to Brad Ducorsky of HDM, which implies that there was publication to a third party. However, plaintiff's opposition to the motion to dismiss does not argue this theory of publication. In addition, plaintiff's briefs describe HDM as its agent or partner. Thus, I only consider plaintiff's compelled self-publication argument.

[4] Plaintiff offers an alternative theory of publication, citing the Restatement (Second) of Torts, § 577, comment m. The exception is inapplicable here. It allows for self-publication to establish defamation when the defamed person is incapable of understanding the defamatory statements (by reason of, for example, blindness or an inability to speak the language).

6

Country Club, Inc. v. Regency Sav. Bank, F.S.B., 815 N.E.2d 241, 245 (Mass. App. Ct. 2004). The complaint does not allege that defendants knew Ohlson was for sale at the time Hall made the Listeria statements nor that it made any such statements to prospective buyers. The claim for tortious interference therefore fails as a matter of law.

### E.    Fraud (Count I) and Violation of Chapter 93A, § 11 (Count IV)

To establish a claim for common law fraud in Massachusetts, plaintiff must demonstrate that defendants "made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage." Russell v. Cooley Dickinson Hosp., Inc., 772 N.E.2d 1054, 1066 (Mass. 2002) (internal citations omitted). "It is sufficient to show proof of a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge." Id. Defendants argue that plaintiff cannot carry its burden on the fraud claim because (1) a July 2019 test showed that the Ohlson equipment was in fact contaminated with Listeria and (2) the statements were Hall's opinions.

The arguments fall short. First, the complaint alleges that Hall knew the Ohlson equipment was "clean" when he made the Listeria allegations in February 2017. The July 2019 test is irrelevant; it was administered more than two years after Hall made the allegations. In addition, while some of Hall's statements could be characterized as opinions, at least one email may have suggested that defendants had in fact found Listeria on the Ohlson equipment. See Compl., Ex. E ("Your equipment . . . is dangerous to my employees and the people that consume our products. . . . I've got

7

expert witness from within the industry.  Non partisan health and safety inspectors.
Former and current USDA officials.  I've got the contaminated, defective and dangerous
conveyors.").  Plaintiff has thus alleged sufficient facts to withstand the motion to
dismiss on count I.  Because "[c]ommon law fraud can be the basis for a claim of unfair
or deceptive practices," the Chapter 93A claim also survives the motion to dismiss.  See
McEvoy Travel Bureau, Inc. v. Norton Co., 563 N.E.2d 188, 194 (Mass. 1990).

### III.    Massachusetts Anti-SLAPP Statute

Defendants also filed a special motion to dismiss under the Massachusetts anti-
SLAPP statute, Mass. Gen. Laws ch. 231, § 59H.  To prevail on the special motion,
defendants must first demonstrate that "the nonmoving party's claims are solely based
on [defendants'] petitioning activities."  Blanchard v. Steward Carney Hosp., Inc., 75
N.E.3d 21, 38 (Mass. 2017).  Defendants argue that the threats of Listeria
contamination are petitioning activity because they were "reasonably likely to encourage
consideration or review of an issue by a legislative, executive, or judicial body or any
other governmental proceeding."  M.G.L. ch. 231, § 59H.  However, plaintiff has
plausibly alleged that Hall made the statements to coerce Ohlson to refund the
equipment's purchase price, not because the equipment was contaminated.  Indeed,
plaintiff made contemporaneous statements to his counsel that the equipment was
"clean."  It is therefore not reasonable to conclude that the statements were made to
encourage review of an issue by a government body.  Defendants do not meet their
threshold burden of showing that plaintiff's claim was based on defendants' exercise of
their right of petition.  Accordingly, the special motion to dismiss is denied.

8

IV.    **Conclusion**

Defendants' Motion to Dismiss (Docket # 14) is ALLOWED as to counts II and III

and DENIED as to counts I, IV and the special motion to dismiss under the anti-SLAPP

statute.  The motion for extension of time to file (Docket # 19) is ALLOWED.

Defendants' motion for leave to file a reply memorandum (Docket # 21) is ALLOWED.

The motion to strike the Ohlson affidavit and the motion to file an opposition to the

motion (Docket # 22 and 25) are DENIED.


   August 5, 2021                                             
        DATE                                  RYA W. ZOBEL
                                  UNITED STATES DISTRICT JUDGE